Abdellah **LAHRAR**, Plaintiff,

v.

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., Defendants.**

**No. 1:06cv1414.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 8, 2007.

---

Alix Rebecca Luise Mattingly, Greenberg Traurig LLP, McLean, VA, for Plaintiff.

Catherine Deroever Wood, United States Attorney's Office, Alexandria, VA, for Defendants.

## ORDER

ELLIS, District Judge.

The matter came before the Court on defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), or in the alternative, to remand the matter to the United States Citizenship and Immigration Services for a determination regarding plaintiff's application for naturalization. Plaintiff, Abdellah Lahrar, requests an adjudication of his naturalization application and seeks relief by way of the Immigration and Nationality Act, 8 U.S.C. § 1447(b); Administrative Procedures Act ("APA"), 5 U.S.C. § 706; and the general "federal question" statute, 28 U.S.C. § 1331. In

essence, plaintiff seeks an order directing defendants, officers of the Department of Homeland Security, the U.S. Citizenship and Immigration Services ("CIS"), the Executive Branch, and the Federal Bureau of Investigation ("FBI"), to complete promptly plaintiff's background check and adjudicate his application for naturalization.

Plaintiff is a citizen of Morocco and a lawful permanent resident of the United States. The complaint alleges that on April 2, 2003, plaintiff applied for naturalization as a citizen of the United States, and that he was thereafter interviewed by CIS officials on April 26, 2004, at which time he was informed that his name check clearance was still pending.[1] Plaintiff contends that this April 26, 2004 interview triggered the running of the statutory 120 day period which must expire before a civil suit seeking judicial review of a pending naturalization application may be brought under § 1447(b).[2] Defendants have moved to dismiss plaintiff's complaint on jurisdictional grounds, arguing that the statutory 120 day period is triggered by the completion of CIS's "examination," which includes plaintiff's background check. Thus, defendants contend that because plaintiff's background check has not been completed, the statutory 120 day period provided by § 1447(b) has not been triggered, and therefore, subject matter jurisdiction over plaintiff's complaint is lacking. In this regard, defendants rely chiefly on this Court's decision in *Danilov v. Aguirre*, 370 F.Supp.2d 441 (E.D.Va.2005), which held that the statutory 120 period provided by

1. According to the declaration of Michael A. Cannon, Section Chief of the National Name Check Program Section, the FBI received plaintiff's name check request on May 9, 2003 and passed plaintiff's name through an initial electronic check. Thereafter, the FBI passed plaintiff's name through a secondary manual check and the FBI has now assigned plaintiff's name check to an analyst for a more searching review.

2. In particular, § 1447(b) provides that a district court has jurisdiction to hear suits to compel agency action on a naturalization application or to adjudicate an application "if there is a failure to make a determination under § 1446 of this title before the end of the 120 day period *after the date on which the examination is conducted* under this section ...." (emphasis added).

§ 1447(b) does not begin to run until all parts of the "examination process" are completed, including the FBI background check.

On March 23, 2007, the parties appeared, by counsel, and oral argument on defendants' motion was heard. Disposition of defendants' motion was deferred and defendants were directed to file a supplemental memorandum and supporting materials addressing (i) the status of plaintiff's application for naturalization, including the status of plaintiff's background and security checks and (ii) the nature of the FBI investigation conducted pursuant to an application for naturalization. *Lahrar v. United States Citizenship and Immigration Svcs.*, No. 1:06cv1414 (E.D.Va. March 23, 2007) (Order).

As defendants' submission points out, Congress has mandated that a "full criminal background check" be conducted as to each applicant for naturalization. *See* Pub.L. No. 105–119, 111 Stat. 2448–49 (Nov. 26, 1997). To fulfill this Congressional mandate, CIS, upon receiving a naturalization application, initiates an FBI name check, a fingerprint check, and a check against the records maintained in the Interagency Border Inspection System, which contains "watch list" information from various federal law enforcement intelligence agencies. These background checks can themselves trigger the need for additional checks. For example, after CIS initiates an FBI name check, the FBI conducts an initial electronic search, which looks for any records contained in the FBI's Central Records System that may yield information bearing on the applicant's eligibility for naturalization, including for example, criminal or administrative records. If, following this initial electronic check, an electronic "hit" is returned indicating a possible match between the FBI's records and the name being checked, then a secondary manual check must be performed. If this secondary manual check indicates that the name being checked may be the subject of one or more FBI records, each such record must be retrieved and reviewed to determine if the record contains "derogatory" information.[3] If "derogatory" information is uncovered, the FBI provides CIS a summary of the information for its consideration in adjudicating the alien's naturalization application.

As this brief description illustrates, the "examination" required under § 1446 for adjudication of a naturalization application is "a process, not an isolated event." *Danilov*, 370 F.Supp.2d at 444 n. 6. Indeed, as the statute itself makes clear, an "examination" is an information-gathering process "which necessarily may include one or more in-person interviews, as well as other activities including (i) the issuance of subpoenas, (ii) the taking of under oath testimony by the applicant and other individuals, and (iii) the production and review of relevant documents." *Id.* at n. 6 (citing 8 U.S.C. § 1446(b)). And, as Congress has mandated that a criminal background investigation of each applicant be completed as part of the examination of the applicant, it is pellucidly clear that the "examination" process has not concluded until an FBI background check has been completed. *See* Pub.L. No. 105–119, Title I, Nov. 26, 1997, 111 Stat. 2448–49; *id.* at 444.

The principles canvassed in *Danilov*, coupled with the government's descrip-

---

**3.** It is worth noting that in this case, presumably because plaintiff's initial electronic check produced an electronic "hit" indicating a possible match between the FBI's records and his name, a secondary manual check was performed. This secondary manual check, it appears, indicated that plaintiff's name may be the subject of one or more FBI records, as such, plaintiff's name check has been referred to an analyst to retrieve and review any such FBI records to determine if they contain "derogatory" information.

tion in this case of the mechanics of the background investigation, underscore the importance of adhering to the *Danilov* holding. Although district courts are not uniform on this point, a number of courts have reached the same conclusion based on these principles.[4] These district court decisions and *Danilov* reflect that "American citizenship is the treasured and worthy goal of most immigrants in this country. It is, appropriately, a goal that is not easily attained; the path is often long and arduous." *Laryea v. United States*, 300 F.Supp.2d 404, 405 (E.D.Va.2004). Accordingly, as plaintiff's background check is not yet complete, the statutory 120 day period provided by § 1447 has not been triggered and plaintiff's complaint must therefore be dismissed for lack of subject matter jurisdiction.[5]

In addition, while plaintiff has sought to invoke two other potential sources of subject matter jurisdiction, the APA and § 1331, neither of these provisions applies where, as here, their application would "al-low a litigant to avoid limitations on a specific grant of jurisdiction, namely 8 U.S.C. § 1447(b), by means of a general grant of jurisdiction." *El–Sayed v. Howard*, 1:06cv967 (E.D.Va. Dec. 1, 2006) (Order); *Danilov*, 370 F.Supp.2d at 444–45 (rejecting claim that subject matter jurisdiction existed under APA and mandamus statutes). Therefore, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.

Accordingly, for these reasons, and for good cause,

It is hereby **ORDERED** that defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Accordingly, plaintiff's complaint is **DISMISSED**.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

---

**4.** *See Martinez v. Gonzales*, 463 F.Supp.2d 569, 571–73 (E.D.Va.2006) (holding that the statutory 120 day period had not begun to run where background check had not been completed); *Kassemi v. Dep't of Homeland Security*, No. 06–1010, 2006 WL 2938819, at *1, 2006 U.S. Dist. LEXIS 74516, at *4–5 (D.N.J. Oct. 13, 2006) (holding that "the statutory 120 day period did not begin to run until Defendants received the results of plaintiff's background check"); *Walji v. Gonzales*, No. H–06–1163, 2006 U.S. Dist. LEXIS 95931, at *12–13 (S.D.Tex. Oct. 6, 2006) (holding that "the 120–day period found in 8 U.S.C. § 1447(b) is not triggered until the investigation by immigration officials is finished, which includes the completion of the FBI name check"); *Damra v. Chertoff*, No. 1:05cv0929, 2006 WL 1786246, at *2, 2006 U.S. Dist. LEXIS 45563, at *6 (N.D. Ohio, June 23, 2006) (holding that "the 'examination' of an application for naturalization is a process, not an isolated event; and that process includes all facets of the USCIS background investigation, including the FBI's criminal background investigation, which, in the instant case, is as yet incomplete"); *but see Manzoor v. Chertoff*, 472 F.Supp.2d 801 (E.D.Va.2007); *Kahn v. FBI*, No. H–07–0073, 2007 WL 713142, 2007 U.S. Dist. LEXIS 15652 (S.D.Tex. Mar. 6, 2007).

**5.** Although not reached or decided here, it is worth mentioning that it appears that the statutory 120 day period will begin to run, at the earliest, when CIS receives the applicant's FBI background investigation and the applicant has been interviewed by CIS. *See Danilov*, 370 F.Supp.2d at 444 (noting that "the 120 day period began to run, at the earliest, on ... the date on which CIS received the FBI background investigation of plaintiff"); *Kassemi v. Dep't of Homeland Security*, No. 06–1010, 2006 WL 2938819, at *2, 2006 U.S. Dist. LEXIS 74516, at *4–5 (D.N.J. Oct. 13, 2006) (holding that "the statutory 120 day period did not begin to run until Defendants received the results of plaintiff's background check").